**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARCELORMITTAL USA LLC, | : | Civil Action No.: |
| | : | |
| Plaintiff, | : | |
| v. | : | **COMPLAINT** |
| | : | |
| | : | |
| GUARDSMARK, LLC and LEXINGTON | : | **JURY TRIAL DEMANDED** |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

ArcelorMittal USA LLC ("AMUSA"), by and through its undersigned attorneys, complains as follows against Guardsmark, LLC ("Guardsmark") and Lexington Insurance Company ("Lexington") (collectively, "Defendants"):

I.     **INTRODUCTION**

1.     This action for indemnity and insurance coverage seeks declaratory and related relief based upon Guardsmark's and Lexington's continuing refusal to honor their indemnity and insurance obligations to AMUSA in connection with two pending state court actions, *Dunlap v. Gibson, et al.,* No. 2016 L 11548 (Cir. Ct. Cook County, Ill.), and *Wade* v. *Gibson, et al.* No. 2016 L 11769 (Cir. Ct. Cook County, Ill.) (collectively, the "Underlying Actions").

2.     Guardsmark's and Lexington's recalcitrance and resulting non-payment of AMUSA's properly-incurred costs of defending itself in the Underlying Actions constitutes a breach of the indemnity and insurance obligations that they owe to AMUSA.  Through this action, AMUSA seeks damages for Defendants' existing breaches as well as declaratory relief designed to ensure timely payment of future defense costs.

II.      **THE PARTIES**

3.       Plaintiff ArcelorMittal USA LLC is a limited liability company.  The sole

member of ArcelorMittal USA LLC is ArcelorMittal USA Holdings II LLC. The sole member of

ArcelorMittal USA Holdings II LLC is ArcelorMittal North America Holdings LLC.  The sole

member of ArcelorMittal North America Holdings LLC is ArcelorMittal Holdings LLC. The

sole member of ArcelorMittal Holdings LLC is ArcelorMittal USA Holdings LLC. The sole

member of ArcelorMittal USA Holdings LLC is Ispat Inland S.A.R.L., which is a limited

liability company.  Ispat Inland S.A.R.L. is wholly owned by ArcelorMittal S.A., a Luxembourg

corporation with its principal place of business in Luxembourg.

4.       Defendant Guardsmark, LLC is a limited liability company.  Upon information

and belief, defendant Guardsmark, LLC is a citizen of the United States for diversity jurisdiction

purposes.

5.       Defendant Lexington Insurance Company is a corporation organized under the

laws of Delaware, with its principal place of business in Massachusetts.

III.     **JURISDICTION AND VENUE**

6.       This Court has jurisdiction over the subject matter of this Action pursuant to 28

U.S.C. § 1332 because there is complete diversity of citizenship between the parties to this

Action and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.       Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

IV.      **FACTUAL ALLEGATIONS**

A.       **AMUSA's East Chicago Facility and the Term Services Agreement**

8.       AMUSA and Guardsmark were parties to a Term Services Agreement covering

the period November 1, 2015 to October 31, 2018, in which AMUSA agreed to purchase and

2

Guardsmark agreed to provide security and other services at, inter alia, AMUSA's facility in East Chicago, Indiana.

9.     One of the services provided by Guardsmark under the Term Services Agreement was to perform daily and nightly patrols of AMUSA's property.  Part of the nightly patrols included confirmation that the navigational lights on the breakwall at AMUSA's East Chicago, Indiana facility were properly working.

10.     The Term Services Agreement attaches and incorporates a Contractor Work Master Agreement ("AMUSA-102").  Section 22(a) of AMUSA-102, as modified by an Addendum, provides that:

> Contractor shall indemnify, defend and save harmless Owner's Indemnitees from and against any and all Claims made by any person or persons (including Contractor or any of its Subcontractors or any employee, agent or invitee of Contractor or any of its Subcontractors) by reason of any act or omission on the part of Contractor or any of its Subcontractors or any employee, agent or invitee of Contractor or any of its Subcontractors, including any breach or alleged breach of any statutory duty that is to be performed by Contractor under this Contractor Work Contract. Notwithstanding the forgoing obligations in this Section 22(a), Contractor shall not be required to indemnify and save harmless Owner's Indemnitees from Claims that are finally determined by a court with jurisdiction to have been caused solely by the negligence or willful misconduct of Owner's Indemnitees; provided, however, that the condition or operation of Owner's Indemnitees' production and manufacturing facilities in the normal course of Owner's Indemnitees' businesses shall be deemed not to be negligence or willful misconduct.

11.     Further, Section 22(b) of AMUSA-102 provides in relevant that:

> In the event of any Claim covered under Section 22(a) above, immediately upon Owner's demand Contractor shall assume at its expense, on behalf of Owner's Indemnitees, the defense of any action at law or in equity that may be brought against Owner's Indemnitees and shall pay on behalf of Owner's Indemnitees the amount of any judgment or award that may be entered against Owner's Indemnitees.

12.     Further, Section 23 of the AMUSA-102 specifies the insurance obligations

undertaken by Guardsmark.  Section 23(b) provides in relevant part that "Contractor shall

procure and maintain in effect … the following types of insurance coverages … from the

commencement of a Contractor Work Contract until completion of the Work":

>       (i) $3,000,000 per occurrence of commercial general liability
>       insurance (including umbrella coverage), on a form at least as
>       broad as Insurance Services Office ("ISO") commercial general
>       liability "occurrence" form CG 00 01 0196 (available through a
>       commercial insurance broker) or another "occurrence" form
>       providing equivalent coverage and approved in writing by Owner;
>       and such commercial general liability insurance and any necessary
>       riders thereto shall provide at least the following coverages:
>       (1) contractual liability coverage as applicable to any hold
>       harmless agreements in this Contractor Work Contract;
>       (2) completed operations coverage;
>       (3) broad form property coverage for property in the care, custody,
>       or control of the Contractor, except that Owner shall provide
>       insurance to cover damage to or loss of Owner's property in due
>       course of transit;
>       (4) coverage for liability arising out of professional services or out
>       of explosion, collapse, underground operations, or damage to
>       utilities and loss of use resulting therefrom, with an "Aggregate Per
>       Project" endorsement; and
>       (5) products liability.

13.     Further, Sections 23(c) and (d) of AMUSA-102 provide:

>       (c) All required policies of insurance shall contain a waiver of
>       subrogation in favor of Owner's Indemnitees. The required
>       commercial general liability, employers liability, and motor
>       vehicle liability insurance policies shall cover Owner as an
>       additional insured with respect to Claims arising out of the Work
>       of the named insured or on the real property of any Owner
>       Company, and with respect to Claims by employees of Contractor
>       or their personal representatives, heirs, and beneficiaries. Such
>       coverage shall be primary to and noncontributory with any other
>       insurance carried by Owner.
>
>       (d) The required policies of insurance for commercial general
>       liability, employers liability, motor vehicle liability, and builders
>       risk shall not have deductibles or self-insured retentions which are
>       greater than the lesser of (i) five percent (5%) of the coverage limit

provided by the policy, or (ii) the deductibles or self-insured retentions in Contractor's general program of business insurance, unless approved in writing by Owner. All deductibles on insurance required to be obtained under this Contractor Work Contract shall be borne by Contractor at its sole expense, without reimbursement by Owner, and shall be treated as "insurance" for the purpose of the waiver in Section 23(h) below.

**B.** **The Underlying Actions**

14.     In late July 2016, a boat accident occurred in Lake Michigan near AMUSA's

facility in East Chicago, Indiana.  Two individuals (Timothy Dunlap and Richard Wade) were

killed when a boat driven by Tony Gibson collided with AMUSA's breakwall.  (Mr. Gibson

subsequently pleaded guilty to two counts of reckless homicide in connection with the accident.)

15.     On November 23, 2016, Mr. Dunlap's estate filed suit against AMUSA and others

in an action styled *Dunlap v. Tony Gibson, Calumet Yacht Club, Inc., and Arcelor Mittal USA,

Inc.,* No. 2016 L 11548 (Cir. Ct. Cook County, Ill.).

16.     A true and correct copy of the initial complaint filed in the *Dunlap* action is

attached as Exhibit A.

17.     On December 2, 2016, Mr. Wade's estate filed suit against AMUSA and others in

an action styled *Wade* v. *Tony Gibson, Calumet Yacht Club, Inc., and Arcelor Mittal USA, Inc.,*

No. 2016 L 11769 (Cir. Ct. Cook County, Ill.).

18.     A true and correct copy of the initial complaint filed in the *Wade* action is

attached as Exhibit B.

19.     The initial complaints filed in both Underlying Actions (the "Underlying

Complaints") allege that AMUSA owned land extending into Lake Michigan with a red light

installed to warn boaters of the breakwater wall at night, and AMUSA negligently:

a.     "Failed to perform daily inspections of the red warning light to ensure it was

operating; or

      b.      Failed to change the light bulb within the red warning light to ensure it was illuminating the breakwater wall; or

      c.      Failed to maintain the red warning light."

(Ex. A, *Wade* Compl., Count V, ¶ 6; Ex. B, *Dunlap* Compl., Count V, ¶ 6.)

20.      The Underlying Complaints further allege that as a result of AMUSA's alleged negligence, Messrs. Wade and Dunlap were injured and died.  (Ex. A, *Wade* Compl., Count V, ¶ 7; Ex. B, *Dunlap* Compl. Count V, ¶ 7.)

21.      The plaintiffs subsequently amended their complaints on or about August 31, 2017 to directly name Guardsmark as a defendant (the "Second Amended Underlying Complaints") and to directly allege that Guardsmark, as the security contractor for AMUSA, "was required to ensure the east marine lantern(s) on the [AMUSA] breakwall that was in navigable waters was illuminated and if it was not operational/illuminated, to report the non-operational east marine lantern(s) to [AMUSA]."  (*Wade* Second Am. Compl., Count VII, ¶ 9; *see also Dunlap* Second Am. Compl., Count VII, ¶ 10.)

22.      True and correct copies of the quoted second amended complaints filed in the Underlying Actions are attached as Exhibits C and D.

23.      In the Second Amended Underlying Complaints, the plaintiffs alleged that Guardsmark negligently:

      a.      "Failed to make regular security checks of the [AMUSA] breakwall and its marine lanterns; or

      b.      Failed to report to [AMUSA] that a single or possibly multiple east marine lantern(s) was/were not operational; or

      c.      Failed to advise boaters about the existence of the non-operational east marine lantern or provide emergency illumination; or

      d.      Failed to perform preventative maintenance on the east marine lantern; or

e. Failed to alert boaters of the existence of the breakwall by other means or warning or illumination."

(Ex. C, *Wade* Second Am. Compl., Count VII, ¶ 11; *see also* Ex. D, *Dunlap* Second Am. Compl., Count VII, ¶ 12.)

**C.  Guardsmark's and Lexington's Repeated Failure to Acknowledge Their Obligations to AMUSA**

24.  By letter dated July 25, 2017, counsel for AMUSA wrote to Guardsmark to demand (i) indemnity pursuant to the Section 22(a) of the AMUSA-102 and the Term Services Agreement, and (ii) insurance coverage pursuant to the general liability insurance policy that Guardsmark was required to procure pursuant to Section 23 of the AMUSA-102 and the Term Services Agreement.  The letter attached copies of the Underlying Complaints.

25.  Guardsmark's third-party administrator responded to AMUSA's tender by letter dated August 3, 2017, which advised AMUSA "that we are currently investigating this loss on behalf of our insured [Guardsmark]."

26.  Lexington, through its authorized representative, responded to AMUSA's tender by letter dated August 10, 2017, which confirmed that Lexington had issued Policy No. 059332010 covering, inter alia, Guardsmark as a named insured (the "Lexington Policy," a true and correct copy of which, as provided to AMUSA, is attached as Exhibit E).  Lexington further asserted that "[t]he subject complaints contend that ArcelorMittal owned the land which extended onto Lake Michigan near the entrance to the East Chicago Marina, [upon] which stood a red light that illuminated a breakwater wall to alert motorists of the existence of said breakwater wall at night.  We do not have sufficient information to determine if this incident arises out of Guardsmark's work or professional services."  Further, Lexington asserted that its

7

duty to defend was not triggered until "such time the [retention of the Lexington Policy] is exhausted."

27.     The "investigation" that both Guardsmark and Lexington purportedly needed to conduct involved information that was entirely within Guardsmark's control.  Guardsmark and its insurer knew quite well (or easily could have learned) that one of the services Guardsmark provided under the Term Services Agreement was to perform daily and nightly patrols of AMUSA's property, and that part of the nightly patrols included confirmation that the navigational lights on the breakwall at AMUSA's East Chicago, Indiana facility were properly working.  Guardsmark and its insurer also knew quite well (or easily could have learned) that Guardsmark personnel did not inform AMUSA of any malfunctions or other concerns related to the operation of the navigational lights in the time period prior to the boat accident in question.

28.     As the Underlying Actions progressed and defense costs continued to mount, Guardsmark and Lexington continued to feign ignorance of the straightforward basis upon which they were obligated to pay AMUSA's defense costs – even after the plaintiffs in the Underlying Actions amended the Underlying Complaints to assert that Guardsmark was directly liable for its failure to make security checks of the AMUSA breakwall and marine lanterns, to report to AMUSA that the east marine lantern was not operational, to conduct preventative maintenance on the lantern, and to alert boaters about the existence of the lantern and breakwall.  (*See* Ex. C *Wade* Second Am. Compl., Count VII, ¶ 11; Ex. D, *Dunlap* Second Am. Compl., Count VII, ¶ 12.)

29.     By letter dated February 12, 2019, AMUSA gave Guardsmark and Lexington one further chance to voluntarily acknowledge and honor the obligations that they had consciously

ignored over the previous nineteen months.  As of the filing of this Complaint, Guardsmark and

Lexington had not provided any substantive response to the February 12, 2019 letter.

30.     This litigation followed.

### FIRST CAUSE OF ACTION

### (Declaratory Relief as against Guardsmark – Payment of AMUSA's Defense Costs)

31.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 30 of

this Complaint as if fully set forth herein.

32.     Pursuant to Section 22 of the Term Services Agreement, Guardsmark is obligated

to pay AMUSA's defense costs in connection with the Underlying Actions.

33.     Guardsmark has refused to pay AMUSA's defense costs in connection with the

Underlying Actions.

34.     Pursuant to 28 U.S.C. § 2201, AMUSA is entitled to a declaration by this Court of

Guardsmark's obligations under the Term Services Agreement.

35.     An actionable and justiciable controversy exists between AMUSA and

Guardsmark concerning the proper construction of the Term Services Agreement, and the rights

and obligations of the parties thereto, with respect to the Underlying Actions.

36.     AMUSA is entitled to a declaration that Guardsmark is obligated to pay all of

AMUSA's defense costs in connection with the Underlying Actions, subject only to the

following provision in Section 22(a) of the AMUSA-102: "Notwithstanding the forgoing

obligations in this Section 22(a), Contractor shall not be required to indemnify and save harmless

Owner's Indemnitees from Claims that are finally determined by a court with jurisdiction to have

been caused solely by the negligence or willful misconduct of Owner's Indemnitees; provided,

however, that the condition or operation of Owner's Indemnitees' production and manufacturing

facilities in the normal course of Owner's Indemnitees' businesses shall be deemed not to be negligence or willful misconduct."

## SECOND CAUSE OF ACTION

### (Declaratory Relief as against Lexington – Payment of AMUSA's Defense Costs)

37.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 30 of this Complaint as if fully set forth herein.

38.     Pursuant to the terms of the Lexington Policy, Lexington is obligated to defend AMUSA and pay defense costs incurred by AMUSA in connection with the Underlying Actions upon the satisfaction of any applicable retention, which, on information and belief, has already occurred.

39.     Lexington has refused to acknowledge its current legal obligations to AMUSA.

40.     Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaration by this Court of Lexington's obligations under the Lexington Policy.

41.     An actionable and justiciable controversy exists between AMUSA and Lexington concerning the proper construction of the Lexington Policy, and the rights and obligations of the parties thereto, with respect to the Underlying Actions.

42.     AMUSA is entitled to a declaration that Lexington is currently obligated to defend AMUSA and pay all of AMUSA's defense costs with respect to the Underlying Actions under the Lexington Policy.

## THIRD CAUSE OF ACTION

### (Declaratory Relief as against Lexington – Waiver of Coverage Defenses)

43.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44.     Pursuant to the terms of the Lexington Policy, Lexington is obligated to defend AMUSA and pay defense costs incurred by AMUSA in connection with the Underlying Actions upon the satisfaction of any applicable retention, which, on information and belief, has already occurred.  If AMUSA becomes legally obligated to pay damages in the Underlying Actions, Lexington is further obligated to pay those damages.

45.     On July 25, 2017, AMUSA notified Guardsmark of the Underlying Actions and demanded indemnification and insurance coverage.  On August 10, 2017, Lexington responded to AMUSA that it lacked sufficient information to render its coverage decision despite the clear language in the Lexington Policy, the AMUSA-102, and the complaints in the Underlying Actions.  Making the duty to defend AMUSA even more apparent, the plaintiffs in the Underlying Action identified Guardsmark as an additional defendant less than two weeks later.

46.     Over nineteen months have passed since Lexington first claimed it lacked sufficient information to render a coverage decision to AMUSA.  This was more than enough time to conduct any "investigation" of AMUSA's claim, particularly in light of the fact that all information relevant to such "investigation" is in the control of Lexington's insured, Guardsmark.

47.     Lexington has also failed to timely deny coverage, accept AMUSA's defense under a reservation of rights, or seek a declaratory judgment to resolve any disputes regarding coverage.  By sitting on AMUSA's tender, Lexington effectively failed to respond to AMUSA's claim at all.  Lexington's delay in adjudicating AMUSA's claim in over a year and a half has prejudiced AMUSA by depriving AMUSA of the benefit of the insurance coverage for which it had contracted.  AMUSA has not only been forced to pay its own defense costs for over one and

a half years, but will continue to incur substantial costs to defend itself against the plaintiffs' serious claims as long as this controversy remains unresolved.

48.     Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaration by this Court that Lexington has waived any coverage defenses to AMUSA's claim that Lexington may have had under the Lexington Policy.

49.     An actionable and justiciable controversy exists between AMUSA and Lexington concerning the proper construction of the Lexington Policy, and the rights and obligations of the parties thereto, with respect to the Underlying Actions.

50.     AMUSA is entitled to a declaration that Lexington has waived any coverage defenses to AMUSA's claim that Lexington may have had under the Lexington Policy.

## FOURTH CAUSE OF ACTION
### (Breach of Contract as Against Guardsmark)

51.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 30 of this Complaint as if fully set forth herein.

52.     The Term Services Agreement constitutes a valid and enforceable contract.

53.     AMUSA demanded that Guardsmark pay AMUSA's defense costs with respect to the Underlying Actions, and otherwise performed any applicable conditions precedent required of it under the Term Services Agreement, or such conditions have been waived.

54.     Under the express terms of the Term Services Agreement, Guardsmark is obligated to pay AMUSA's defense costs in connection with the Underlying Actions.

55.     Guardsmark has failed and refused to pay AMUSA's defense costs in connection with the Underlying Actions, thereby breaching the terms and conditions of the Term Services Agreement.

56.     As a direct and proximate result of Guardsmark's breach of the Term Services

Agreement, AMUSA has suffered and will suffer damages in an amount to be determined at

trial, but in any event no less than the jurisdictional limits of this Court, plus pre- and post-

judgment interest to the extent permitted by law.

### FIFTH CAUSE OF ACTION

### (Breach of Contract as Against Lexington)

57.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 30 of

this Complaint as if fully set forth herein.

58.     The Lexington Policy constitutes a valid and enforceable contract.

59.     AMUSA is an additional insured under the Lexington Policy.

60.     AMUSA has performed any conditions precedent required of it as an additional

insured under the Lexington Policy or such conditions have been waived.

61.     Under the express terms of the Lexington Policy, Lexington is obligated to defend

AMUSA and pay AMUSA's defense costs incurred in connection with the Underlying Actions

which are in excess of any applicable retention, which, on information and belief, has already

been exhausted.

62.     Despite the fact that the defense costs incurred in connection with AMUSA's and

Guardsmark's defense of the Underlying Actions have, on information and belief, exceeded any

applicable retention of the Lexington Policy, Lexington has failed and refused to defend

AMUSA and pay AMUSA's defense costs in connection with the Underlying Actions.  For these

and other reasons, Lexington has breached the terms and conditions of the Lexington Policy.

63.     As a direct and proximate result of Lexington's breach of the Lexington Policy,

AMUSA has suffered and will suffer damages in an amount to be determined at trial, but in any

event no less than the jurisdictional limits of this Court, plus pre- and post-judgment interest to the extent permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

   a.   On the First Cause of Action, declaratory judgment in favor of AMUSA against Guardsmark as set forth in paragraphs 31-36, above;

   b.   On the Second Cause of Action, declaratory judgment in favor of AMUSA against Lexington as set forth in paragraphs 37-42, above;

   c.   On the Third Cause of Action, declaratory judgment in favor of AMUSA against Lexington as set forth in paragraphs 43-50, above;

   d.   On the Fourth Cause of Action, judgment in favor of AMUSA against Guardsmark as set forth in paragraphs 51-56, above;

   e.   On the Fifth Cause of Action, judgment in favor of AMUSA against Lexington as set forth in paragraphs 57-63, above; and

   f.   On all causes of action, for such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:          April 11, 2019


                              JENNER & BLOCK LLP

                              By:  s/ David M. Kroeger

                              David M. Kroeger
                              Catherine L. Doyle
                              353 N. Clark Street
                              Chicago, Illinois 60654-3456
                              Tel: (312) 923-2861
                              Fax: (312) 527-0484
                              dkroeger@jenner.com
                              cdoyle@jenner.com

                              *Attorneys for Plaintiff*
                              *ArcelorMittal USA LLC*