**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ------------------------------------------------------------------------- : | Civil Action No.: 1:19-cv-02451 |
| ARCELORMITTAL USA LLC, : | |
| : | Hon. Robert W. Gettleman |
| Plaintiff, : | |
| v. : | |
| : | |
| : | **FIRST AMENDED COMPLAINT** |
| GUARDSMARK, LLC, : | |
| : | |
| Defendant. : | **JURY TRIAL DEMANDED** |
| : | |
| : | |
| ------------------------------------------------------------------------- | |

ArcelorMittal USA LLC ("AMUSA"), by and through its undersigned attorneys, submits

its First Amended Complaint as follows against Guardsmark, LLC ("Guardsmark" or

"Defendant"):

## I.    INTRODUCTION

1.    This action for indemnity seeks reimbursement for AMUSA's defense costs based

upon Guardsmark's continuing refusal to honor its indemnity obligations to AMUSA in

connection with two recently-settled state court actions, *Dunlap v. Gibson, et al.,* No. 2016 L

11548 (Cir. Ct. Cook County, Ill.), and *Wade* v. *Gibson, et al.* No. 2016 L 11769 (Cir. Ct. Cook

County, Ill.) (collectively, the "Underlying Actions").

2.    Shortly before the Underlying Actions settled, Guardsmark formally admitted –

based on information provided by its own employees – that it had breached its contractual

obligations to AMUSA.  Guardsmark's continuing refusal to pay AMUSA's properly-incurred

costs of defending itself in the Underlying Actions constitutes a breach of the indemnity

1

obligations that it owes to AMUSA. Through this action, AMUSA seeks damages for that breach.

## II.    THE PARTIES

3.    Plaintiff ArcelorMittal USA LLC is a limited liability company. The sole member of ArcelorMittal USA LLC is ArcelorMittal USA Holdings II LLC. The sole member of ArcelorMittal USA Holdings II LLC is ArcelorMittal North America Holdings LLC. The sole member of ArcelorMittal North America Holdings LLC is ArcelorMittal Holdings LLC. The sole member of ArcelorMittal Holdings LLC is ArcelorMittal USA Holdings LLC. The sole member of ArcelorMittal USA Holdings LLC is Ispat Inland S.A.R.L., which is a limited liability company. Ispat Inland S.A.R.L. is wholly owned by ArcelorMittal S.A., a Luxembourg corporation with its principal place of business in Luxembourg.

4.    Defendant Guardsmark, LLC is a limited liability company. Upon information and belief, defendant Guardsmark, LLC is a citizen of the United States for diversity jurisdiction purposes.

## III.    JURISDICTION AND VENUE

5.    This Court has jurisdiction over the subject matter of this Action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties to this Action and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## IV.    FACTUAL ALLEGATIONS

### A.    AMUSA's East Chicago Facility and the Term Services Agreement

7.    AMUSA and Guardsmark were parties to a Term Services Agreement covering the period November 1, 2015 to October 31, 2018, in which AMUSA agreed to purchase and

Guardsmark agreed to provide security and other services at, inter alia, AMUSA's facility in East Chicago, Indiana.

8.     One of the services provided by Guardsmark under the Term Services Agreement was to perform daily and nightly patrols of AMUSA's property.  Part of the nightly patrols included confirmation that the navigational lights on the breakwall at AMUSA's East Chicago, Indiana facility were properly working.

9.     The Term Services Agreement attaches and incorporates a Contractor Work Master Agreement ("AMUSA-102").  Section 22(a) of AMUSA-102, as modified by an Addendum, provides that:

> Contractor shall indemnify, defend and save harmless Owner's Indemnitees from and against any and all Claims made by any person or persons (including Contractor or any of its Subcontractors or any employee, agent or invitee of Contractor or any of its Subcontractors) by reason of any act or omission on the part of Contractor or any of its Subcontractors or any employee, agent or invitee of Contractor or any of its Subcontractors, including any breach or alleged breach of any statutory duty that is to be performed by Contractor under this Contractor Work Contract. Notwithstanding the forgoing obligations in this Section 22(a), Contractor shall not be required to indemnify and save harmless Owner's Indemnitees from Claims that are finally determined by a court with jurisdiction to have been caused solely by the negligence or willful misconduct of Owner's Indemnitees; provided, however, that the condition or operation of Owner's Indemnitees' production and manufacturing facilities in the normal course of Owner's Indemnitees' businesses shall be deemed not to be negligence or willful misconduct.

10.     Further, Section 22(b) of AMUSA-102 provides in relevant that:

> In the event of any Claim covered under Section 22(a) above, immediately upon Owner's demand Contractor shall assume at its expense, on behalf of Owner's Indemnitees, the defense of any action at law or in equity that may be brought against Owner's Indemnitees and shall pay on behalf of Owner's Indemnitees the amount of any judgment or award that may be entered against Owner's Indemnitees.

B.    **The Underlying Actions**

11.    In late July 2016, a boat accident occurred in Lake Michigan near AMUSA's facility in East Chicago, Indiana.  Two individuals (Timothy Dunlap and Richard Wade) were killed when a boat driven by Tony Gibson collided with AMUSA's breakwall.  (Mr. Gibson subsequently pleaded guilty to two counts of reckless homicide in connection with the accident.)

12.    On November 23, 2016, Mr. Dunlap's estate filed suit against AMUSA and others in an action styled *Dunlap v. Tony Gibson, Calumet Yacht Club, Inc., and Arcelor Mittal USA, Inc.,* No. 2016 L 11548 (Cir. Ct. Cook County, Ill.).

13.    A true and correct copy of the initial complaint filed in the *Dunlap* action is attached as Exhibit A.

14.    On December 2, 2016, Mr. Wade's estate filed suit against AMUSA and others in an action styled *Wade* v. *Tony Gibson, Calumet Yacht Club, Inc., and Arcelor Mittal USA, Inc.,* No. 2016 L 11769 (Cir. Ct. Cook County, Ill.).

15.    A true and correct copy of the initial complaint filed in the *Wade* action is attached as Exhibit B.

16.    The initial complaints filed in both Underlying Actions (the "Underlying Complaints") allege that AMUSA owned land extending into Lake Michigan with a red light installed to warn boaters of the breakwater wall at night, and AMUSA negligently:

a.    "Failed to perform daily inspections of the red warning light to ensure it was operating; or

b.    Failed to change the light bulb within the red warning light to ensure it was illuminating the breakwater wall; or

c.    Failed to maintain the red warning light."

4

(Ex. A, *Wade* Compl., Count V, ¶ 6; Ex. B, *Dunlap* Compl., Count V, ¶ 6.)

17. The Underlying Complaints further allege that as a result of AMUSA's alleged negligence, Messrs. Wade and Dunlap were injured and died. (Ex. A, *Wade* Compl., Count V, ¶ 7; Ex. B, *Dunlap* Compl. Count V, ¶ 7.)

18. The plaintiffs subsequently amended their complaints on or about August 31, 2017, to directly name Guardsmark as a defendant (the "Second Amended Underlying Complaints") and to directly allege that Guardsmark, as the security contractor for AMUSA, "was required to ensure the east marine lantern(s) on the [AMUSA] breakwall that was in navigable waters was illuminated and if it was not operational/illuminated, to report the non-operational east marine lantern(s) to [AMUSA]." (*Wade* Second Am. Compl., Count VII, ¶ 9; *see also Dunlap* Second Am. Compl., Count VII, ¶ 10.)

19. True and correct copies of the quoted second amended complaints filed in the Underlying Actions are attached as Exhibits C and D.

20. In the Second Amended Underlying Complaints, the plaintiffs alleged that Guardsmark negligently:

a. "Failed to make regular security checks of the [AMUSA] breakwall and its marine lanterns; or

b. Failed to report to [AMUSA] that a single or possibly multiple east marine lantern(s) was/were not operational; or

c. Failed to advise boaters about the existence of the non-operational east marine lantern or provide emergency illumination; or

d. Failed to perform preventative maintenance on the east marine lantern; or

e.      Failed to alert boaters of the existence of the breakwall by other means or warning

or illumination."

(Ex. C, *Wade* Second Am. Compl., Count VII, ¶ 11; *see also* Ex. D, *Dunlap* Second Am.

Compl., Count VII, ¶ 12.)

21.      As the Underlying Actions progressed, plaintiffs continued to amend their

pleadings and on August 16, 2019, on the eve of trial of the Underlying Actions, Guardsmark

filed amended answers to plaintiffs' fourth amended complaints.  Guardsmark admitted that "it

did not report to [AMUSA] through its agents and or [sic] employees that the subject marine

lantern (East Cell Light) prematurely failed and was not operational during the night time hours

of July 18, July 19, July 20, July 21, and July 22, 2016, as [AMUSA] requested."  (*Wade* Am.

Answer to Fourth Am. Compl., Count VII, ¶ 11; *see also Dunlap* Am. Answer to Fourth Am.

Compl., Count VII, ¶ 12.)

22.      True and correct copies of the Guardsmark's amended answers filed in the

Underlying Actions are attached as Exhibits E and F.

23.      Guardsmark also thereafter filed, in the Underlying Actions, Motion in Limine

No. 30 to Bar Testimony and Evidence Associated with Guardsmark's Admission of Liability

Concerning its Failure to Report to [AMUSA] that the Cell Light Was Not Operating ("Motion

in Limine No. 30"). A true and correct copy of Motion in Limine No. 30 is attached as Exhibit

G.

24.      In Motion in Limine No. 30, Guardsmark again admitted that "[p]art of

Guardsmark's employees' contractual responsibility [to AMUSA] was to observe and document

the subject east cell light's operation, e.g., to determine whether it flashed at night."  (Ex. G, 3.)

Guardsmark also again admitted "that it failed to comply with its contractual obligations to

6

[AMUSA] to document, alert, and/or advise [AMUSA] that the subject east cell light was not operational" for days prior to and on the night of the boating accident. (*Id.*, *see also id.* at 4.)

25. Shortly after Guardsmark's admissions of its breach of its contractual obligations to AMUSA, Guardsmark and other third parties settled the Underlying Actions on behalf of all defendants, including AMUSA. The Underlying Actions were dismissed with prejudice on August 26, 2019.

**C.** **Guardsmark's Repeated Failure to Acknowledge Its Obligations to AMUSA**

26. By letter dated July 25, 2017, counsel for AMUSA wrote to Guardsmark to demand, inter alia, indemnity pursuant to the Section 22(a) of the AMUSA-102 and the Term Services Agreement. The letter attached copies of the Underlying Complaints.

27. Guardsmark did not itself respond to AMUSA's tender, but instead responded through its third-party administrator by letter dated August 3, 2017, which advised AMUSA "that we are currently investigating this loss."

28. Guardsmark's insurer followed suit, asserting by letter dated August 10, 2017, that "[t]he subject complaints contend that ArcelorMittal owned the land which extended onto Lake Michigan near the entrance to the East Chicago Marina, [upon] which stood a red light that illuminated a breakwater wall to alert motorists of the existence of said breakwater wall at night. We do not have sufficient information to determine if this incident arises out of Guardsmark's work or professional services."

29. The "investigation" that both Guardsmark and its insurer purportedly needed to conduct involved information that was entirely within Guardsmark's control. Guardsmark knew quite well (or easily could have learned) that one of the services Guardsmark provided under the Term Services Agreement was to perform daily and nightly patrols of AMUSA's property, and

that part of the nightly patrols included confirmation that the navigational lights on the breakwall at AMUSA's East Chicago, Indiana facility were properly working. Guardsmark also knew quite well (or easily could have learned) that Guardsmark personnel did not inform AMUSA that the navigational light was not operational for at least four days prior to the boating accident in question.

30. As the Underlying Actions progressed and AMUSA's defense costs continued to mount, Guardsmark continued to feign ignorance of the straightforward basis upon which it was obligated to pay those defense costs – even after the plaintiffs in the Underlying Actions amended the Underlying Complaints to assert that Guardsmark was directly liable for its failure to make security checks of the AMUSA breakwall and marine lanterns, to report to AMUSA that the east marine lantern was not operational, to conduct preventative maintenance on the lantern, and to alert boaters about the existence of the lantern and breakwall. (*See* Ex. C *Wade* Second Am. Compl., Count VII, ¶ 11; Ex. D, *Dunlap* Second Am. Compl., Count VII, ¶ 12.)

31. Guardsmark's failure to reimburse AMUSA – even partially – for its defense costs in the Underlying Actions has continued even after Guardsmark's admissions that it had breached its contractual obligations to AMUSA by failing to report to AMUSA for days prior to the boating accident in question that the east marine lantern was not operational. (*See* Ex. E, *Wade* Am. Answer to Fourth Am. Compl., Count VII, ¶ 11; *see also* Ex. F *Dunlap* Am. Answer to Fourth Am. Compl., Count VII, ¶ 12.)

32. It has now been approximately two years and four months since AMUSA first tendered the Underlying Actions to Guardsmark. This period of time includes nearly two years during which Guardsmark claimed the need for additional time to "investigate" whether a defense was owed to AMUSA, as well as months since Guardsmark admitted – based on

8

information provided by its own employees – that the east marine lantern was not operational for days prior to the boating accident, that Guardsmark knew the east marine lantern was not operational for days prior to the boating accident, and that Guardsmark failed to report this information to AMUSA.

33. After this litigation commenced, Guardsmark accepted AMUSA's tender pursuant to a purported reservation of rights, although it has yet to pay any of AMUSA's defense costs – even after its admissions in the Underlying Actions. Because Guardsmark failed to timely and properly accept AMUSA's tender, Guardsmark is now barred from challenging AMUSA's defense costs.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

34. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 33 of this First Amended Complaint as if fully set forth herein.

35. The Term Services Agreement constitutes a valid and enforceable contract.

36. AMUSA demanded that Guardsmark pay AMUSA's defense costs with respect to the Underlying Actions, and otherwise performed any applicable conditions precedent required of it under the Term Services Agreement, or such conditions have been waived.

37. Under the express terms of the Term Services Agreement, Guardsmark is obligated to pay AMUSA's defense costs in connection with the Underlying Actions.

38. Guardsmark has failed and refused to pay AMUSA's defense costs in connection with the Underlying Actions, thereby breaching the terms and conditions of the Term Services Agreement.

39.     As a direct and proximate result of Guardsmark's breach of the Term Services Agreement, AMUSA has suffered and will suffer damages in an amount to be determined at trial, but in any event no less than the jurisdictional limits of this Court, plus pre- and post-judgment interest to the extent permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in favor of AMUSA against Guardsmark as set forth above and for such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:          November 14, 2019

JENNER & BLOCK LLP

By:   s/ David M. Kroeger

David M. Kroeger
Catherine L. Doyle
353 N. Clark Street
Chicago, Illinois 60654-3456
Tel: (312) 923-2861
Fax: (312) 527-0484
dkroeger@jenner.com
cdoyle@jenner.com

*Attorneys for Plaintiff*
*ArcelorMittal USA LLC*

10

## CERTIFICATE OF SERVICE

I, David M. Kroeger, an attorney, certify that on November 14, 2019, I caused a copy of the foregoing **Plaintiff's First Amended Complaint** to be served upon the parties of record via the Court's ECF Notice System.

*/s/ David M. Kroeger*

David M. Kroeger

11